**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **K. J., a minor, by and through her mother and next friend, KR. J., and KR. J.** | ] |
| | ] |
| **Plaintiffs,** | ] |
| | ] |
| **v.** | ] |
| | ] |
| **WILLIAMSON COUNTY BOARD OF EDUCATION,** | ] |
| | ] |
| **Defendant.** | ] |

## COMPLAINT

## INTRODUCTION

1. This is a civil action brought pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and 42 U.S.C. § 1983, seeking damages and injunctive relief to remedy violations of federal law.

2. K. J. is an 11-year-old 6th grade student at Mill Creek Middle School in Williamson County, Tennessee, with a documented diagnosis of Autism Spectrum Disorder dating back to 2015. Based on this disability, Defendant previously determined that K. was eligible for protections under Section 504 of the Rehabilitation Act and developed a Section 504 Plan providing accommodations necessary for K. to access a free appropriate public education (FAPE).

3. In July 2025, Defendant agreed to conduct a reevaluation of K.'s eligibility. After Defendant attempted to conduct student self-report assessments without parental participation—despite Ms. J.'s explicit request to be present for any such assessments—Ms. J. revoked consent for certain evaluation components on September 15, 2025.

4. On September 8, 2025, Principal Jared Grindstaff explicitly informed Ms. J. in writing that if she was unable to meet the 60-day evaluation deadline, she could 'revoke your consent for the re-evaluation, which would allow us to restart the process at a later date.' Despite offering this option, when Ms. J. did revoke consent on September 15, 2025—for the very reason Principal Grindstaff anticipated (inability to complete within the 60-day window with proper parental participation)—the District ignored its own guidance and proceeded anyway.

5. Despite the incomplete evaluation and Ms. J.'s reasonable exercise of her procedural rights, Defendant issued a reevaluation report dated September 24, 2025, determining that K. was no longer eligible for Section 504 protections. This determination was made in bad faith, based on inadequate evaluation data, and in disregard of K.'s documented, lifelong developmental disability.

6. Since the termination of her Section 504 Plan, K. has been denied the accommodations necessary to access her education on equal terms with non-disabled students. Defendant's actions constitute intentional discrimination on the basis of disability and denial of FAPE.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Williamson County, Tennessee, which is within the Middle District of Tennessee.

## PARTIES

9. Plaintiff K. J. is an 11-year-old 6th grade student enrolled at Mill Creek Middle School in Williamson County, Tennessee. K. has a documented diagnosis of Autism Spectrum Disorder and is a qualified individual with a disability under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.
10. Plaintiff Kr. J. is K.'s mother and brings this action as K.'s next friend and on her own behalf for violations of her rights under Section 504 and the ADA.
11. Defendant Williamson County Board of Education is a local education agency and recipient of federal financial assistance. The Defendant operates Mill Creek Middle School and is responsible for ensuring compliance with Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act.

## FACTUAL ALLEGATIONS

### *K.'s Disability and Medical History*

12. K.J. was diagnosed with Autism Spectrum Disorder on November 30, 2015, at Vanderbilt University Medical Center's Treatment and Research Institute for Autism Spectrum Disorders (TRIAD).
13. This diagnosis was confirmed by Dr. Linda Brady.
14. Autism Spectrum Disorder is a lifelong developmental disability that substantially limits major life activities including learning, social interaction, communication, and behavioral and emotional regulation
15. K.'s autism diagnosis has never been in question and remains valid to this day.

### *Establishment of Section 504 Eligibility*

16. On January 13, 2023, Defendant's Section 504 team determined that K. was eligible for protections and accommodations under Section 504 of the Rehabilitation Act based on her Autism Spectrum Disorder.

17. The Defendant District developed a Section 504 Plan providing accommodations necessary for K. to access FAPE, including preferential seating, extended time for assignments and assessments, breaks as needed, visual supports, and other disability-related modifications.

18. K.'s Section 504 Plan was implemented and she received the accommodations provided therein through the end of the 2024-2025 school year.

***K.'s Active and Consistent Use of 504 Plan Accommodations***

19. Prior to Defendant's unlawful removal of her accommodations, K.J. regularly and appropriately utilized the accommodations provided in her 504 Plan, including specifically the accommodation allowing her to turn in late assignments without penalty. This pattern of use demonstrates both the necessity of these accommodations and K.J.'s understanding of how to advocate for herself within the framework established by her 504 Plan:

20. a. On August 14, 2025, K.J. contacted her social studies teacher regarding a missing homework link and utilized her accommodation to turn in the assignment late;

21. b. On August 22, 2025, K.J. contacted her art teacher about missing assignments and a lower quiz grade, utilizing her accommodation to turn in assignments late;

22. c. On August 25, 2025, K.J. contacted her ELA teacher about a missing assignment and utilized her accommodation to turn that assignment in late;

23. d. On September 4, 2025, K.J. contacted her ELA teacher about a missing assignment from when a substitute teacher was present, and utilized her accommodation to turn that assignment in late;

24. e. The August 29, 2025 incident itself was a direct result of the school's failure to properly implement K.J.'s accommodation for late work.

25. This documented pattern of accommodation usage through September 4, 2025—a mere 20 days before Defendant eliminated her accommodations on September 24, 2025—directly contradicts any assertion by Defendant that K.J. was not utilizing her accommodations or that the accommodations were unnecessary. The removal of accommodations that K.J. was actively, regularly, and appropriately using further demonstrates the arbitrary and discriminatory nature of Defendant's actions.

26. Moreover, since the removal of her 504 Plan accommodations in September 2025, K.J. has continued to demonstrate the ongoing need for these accommodations. For instance, on October 27, 2025, K.J. contacted both her ELA teacher (regarding a low quiz grade and a half-finished packet) and her Math teacher (regarding turning in a late assignment and making up a test). These contacts demonstrate that K.J. continues to need the very accommodations that were improperly removed, and that the denial of these accommodations causes her ongoing educational harm.

***July 2025 Section 504 Meeting and Initiation of Reevaluation***

27. On July 23, 2025, Defendant convened a Section 504 meeting to review and update K.'s Section 504 Plan for her transition to middle school.

28. Ms. J. participated in this meeting and advocated for appropriate accommodations to address K.'s needs in the middle school environment.

29. During this meeting, because it was necessary the Section 504 team updated K.'s Plan and then proposed conducting a reevaluation to assess K.'s continued eligibility for Section 504 protections.

30. Ms. J. signed consent for the reevaluation on July 23, 2025, with the understanding that the evaluation would be conducted in accordance with federal procedural requirements, including meaningful parental participation.

31. The original plan had called for a reevaluation in January 2026, but the District moved the reevaluation date up to Summer/Fall 2025.

***September 2025: Procedural Violations and Breakdown of Communication***

32. On September 5, 2025, Ms. J. met with Principal Jared Grindstaff and School Psychologist Molly Loiler requesting to discuss a violation of K.J.'s existing 504 accommodations by School Counselor Abigail Rathgeb. The violation occurred on August 29, 2025, when Ms. Rathgeb directly addressed K.J. multiple times in front of peers in the cafeteria, in direct contravention to K.J.'s accommodation requiring discreet communication and private conversation about any behaviors. This incident caused the expected meltdown (or K.J.'s first panic attack), and is proof of harm K.J. experiences when her 504 accommodations are not followed. Ms. J. requested to review the cafeteria video footage and discuss corrective actions and the 504 violation during this meeting.
33. It was during this meeting, Ms. J. clearly and explicitly stated that she did not want K. to be interviewed or assessed without Ms. J. being present. Ms. J. specifically stated: 'If you need to talk to her, I need to be there.'
34. On September 8, 2025, despite Ms. J.'s clear and repeated instructions that K.J. was not to be interviewed or assessed without her presence, School Psychologist Molly Loiler then attempted to administer student self-report assessments to K.J. without parental presence or prior notice to Ms. J. When K.J. expressed hesitation and asked if her mother was okay with this, Ms. Loiler attempted to persuade K.J. into completing the assessments by showing K.J. *a previously signed July 23, 2025 consent form*, implying that it authorized the testing.
35. K.J., visibly uncomfortable, asked to call her mother before proceeding, and Ms. J. instructed her not to complete the assessments. Ms. Loiler's conduct constituted

coercion and was a violation of Section 504 procedural safeguards, and an act of deliberate indifference to both parental authority and K.J.'s disability-related vulnerabilities.

36. K., knowledgeable that her mother had requested to be present for such assessments, asked to call her mother to confirm whether she was allowed to complete the self-reports. Ms. Loiler permitted K. to call, and Ms. J. instructed K. not to complete the assessments without her present.

37. Later that same day, September 8, 2025, Ms. J. sent an email to Principal Grindstaff and Ms. Loiler documenting this violation of her explicit request and the procedural safeguards guaranteed under Section 504.

38. In response, Principal Grindstaff sent an email on September 8, 2025, acknowledging Ms. J.'s concerns. In this email, Principal Grindstaff explained a 60-day deadline for completing the reevaluation and explicitly offered Ms. J. an alternative if she could not meet within that deadline. Principal Grindstaff stated: '*If not, another option would be to revoke your consent for the re-evaluation, which would allow us to restart the process at a later date*.'

39. Principal Grindstaff further explained: '*If you choose to revoke the re-evaluation, please note that it would need to be rescheduled for later this semester*. The original re-evaluation date was set for January 2026, but the team decided in July to move it up in order to better support K.'s needs.'

40. This email communication demonstrates that: (a) Defendant understood the evaluation timeline was problematic; (b) Defendant explicitly offered revocation and rescheduling as a legitimate option; and (c) Defendant acknowledged that the original evaluation schedule (January 2026) had been moved up by the District's own decision, not due to any legal requirement.

***Ms. J.'s Revocation of Consent and Defendant's Bad Faith Response***

41. On September 15, 2025, consistent with Principal Grindstaff's own suggestion and in response to the District's procedural violations, Ms. J. formally revoked her consent for the reevaluation.

42. Ms. J.'s revocation was reasonable and explicitly contemplated by the District's own communications. She revoked consent precisely because the District could not conduct the evaluation properly with meaningful parental participation within the 60-day window—the very scenario Principal Grindstaff had addressed in his September 8 email.

43. Despite Principal Grindstaff's explicit offer to 'restart the process at a later date' if consent were revoked, Defendant proceeded to complete the reevaluation and issue a determination of ineligibility.

44. On September 24, 2025—only nine days after Ms. J.'s revocation of consent—Defendant issued a Section 504 Reevaluation Report determining that K. was no longer eligible for Section 504 protections.

45. This determination was made in direct contradiction to Defendant's own September 8 guidance, demonstrating bad faith and a predetermined decision to terminate K.'s Section 504 eligibility regardless of the evaluation process.

***The Inadequate and Incomplete Evaluation***

46. The September 24, 2025 reevaluation report was based on incomplete, inaccurate, and procedurally defective data, finalized after the eligibility meeting was already held. The final “revised” version, marked in red as “Final Draft,” was not issued until several days after the eligibility determination, confirming that the decision to terminate Section 504 eligibility was predetermined and not based on finalized or reviewed data.

47. Only one teacher (English Language Arts) completed rating scales. No other teachers provided input despite K. being in multiple classes throughout the school day.

48. Ms. J.'s parent rating scales were never completed because the District's school psychologist, Molly Loiler, sent the parent link to multiple assessments, including one for which she did not have parental consent (the ASRS). This made it impossible for the mother to complete only the tests that had been approved.

49. Despite this procedural defect, the District never resent a corrected link—despite District 504 Coordinator Whitney Kovach directing Ms. Loiler to do so during the September 24, 2025 eligibility meeting. The failure to correct and complete the parent input process violated procedural safeguards and deprived the evaluation of a critical data source.

50. No student self-report assessments were completed, as Ms. J. had appropriately exercised her right to be present for such assessments and the District refused to accommodate this reasonable request.

51. The evaluation included only one brief lunch observation and limited classroom interaction data. This observation was written in third person and appears to be drafted by the school psychologist, despite being credited to Assistant Principal Ms. Black. No observations were conducted in academic settings, and the lunch observation was subjective and unsupported by data.

52. The evaluation failed to adequately consider K.J.'s autism, anxiety, and emotional regulation needs, focusing almost exclusively on academic performance and general classroom demeanor, despite documented medical evidence, prior diagnoses from Vanderbilt University, and confirmation from her treating pediatrician, licensed social worker and behavior analysis.

53. Defendant's determination that K. no longer qualified for Section 504 protections was not based on comprehensive evaluation data, but rather on incomplete and inadequate information gathered in a procedurally deficient process.

***Termination of Services and Ongoing Harm***

54. Following the September 24, 2025 determination of ineligibility, Defendant terminated K.'s Section 504 Plan and ceased providing her with necessary accommodations.
55. Without the accommodations provided in her Section 504 Plan, K. cannot access her education on equal terms with non-disabled students. Her grades in ELA, math, and social studies have declined. For example, on October 17, 2025, K.J. earned a 45% on a benchmark science test that she completed in the hallway with a Chromebook on her lap, unsupervised, after confusion about testing times and lack of staff direction. This environment was chaotic and objectively inappropriate for assessment of any student, particularly one with autism and anxiety.
56. K.J. continues to experience clinically documented Autism Spectrum Disorder and has recently been diagnosed with acute stress disorder and anxiety by her treating provider. These conditions substantially limit major life activities, including learning, communication, concentration, emotional regulation, and social interaction. Without accommodations, these limitations are directly triggered by the school environment, resulting in observable distress and educational regression.
57. The denial of accommodations causes K. ongoing educational, emotional, and psychological harm. Since the loss of her 504 supports, she has: required multiple therapy sessions with her BCBA and licensed social worker to address increased anxiety and school-related stress; left school early on October 1, 2025 after an anxiety episode that led to crying and a visit to the nurse; and reported feeling overwhelmed in testing situations and due to unclear directions and inadequate supervision. These

incidents represent both educational deprivation (loss of access to instruction and grades) and emotional injury directly attributable to the District's failure to provide FAPE.

58. Without immediate injunctive relief, K.J. will continue to be denied meaningful educational access and experience irreparable harm to both her academic achievement and emotional stability. Each day that the Defendant fails to reinstate her 504 accommodations compounds the deprivation—reducing grades, damaging confidence, and undermining therapeutic progress. The harm is ongoing, foreseeable, and well-documented by both school communications and clinical professionals.

***Kr. J.'s Advocacy Efforts***

59. Kr. J. has repeatedly advocated for her daughter and requested that the District maintain K.'s Section 504 Plan and provide appropriate accommodations.

60. Ms. J. participated actively in the July 23, 2025 Section 504 meeting and advocated for appropriate accommodations for K.'s transition to middle school.

61. Ms. J. raised concerns during the evaluation process about the District's procedures and the manner in which assessments were being conducted.

62. Ms. J. exercised her procedural rights by revoking consent for an evaluation that was not being conducted in accordance with federal requirements and that the District itself had suggested could be rescheduled.

63. Despite Ms. J.'s reasonable efforts and the District's own acknowledgment that rescheduling was an appropriate option, Defendant proceeded in bad faith to terminate K.'s Section 504 eligibility.

64. The District's refusal to provide K. with a Section 504 Plan and necessary accommodations constitutes intentional discrimination on the basis of disability and retaliation for Ms. J.'s exercise of her procedural rights.

## CAUSES OF ACTION

### COUNT I
### Violation of Section 504 of the Rehabilitation Act
### 29 U.S.C. § 794

65. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

66. Section 504 of the Rehabilitation Act provides that 'no otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.' 29 U.S.C. § 794(a).

67. K.J. is a qualified individual with a disability under Section 504. She has a long-standing diagnosis of Autism Spectrum Disorder (diagnosed in 2015) and has additionally been diagnosed with Generalized Anxiety Disorder and Acute Stress Disorder. These conditions substantially limit her ability to learn, concentrate, think, communicate, regulate emotions in the school environment. Her disabilities have also required outside therapy and behavioral intervention services, and her emotional regulation challenges are documented through both medical and school records.

68. Defendant is a recipient of federal financial assistance and operates programs and activities covered by Section 504.

69. Defendant has discriminated against K. on the basis of her disability by: (a) terminating her Section 504 Plan based on an inadequate and procedurally deficient reevaluation; (b) denying her FAPE by refusing to provide necessary accommodations; and (c) excluding her from participation in educational programs and activities on equal terms with non-disabled students.

70. Defendant's discriminatory conduct was intentional and made in bad faith, as evidenced by: (a) the District's September 8 email explicitly offering the option to revoke consent and reschedule the evaluation; (b) the District's decision to proceed with termination

despite its own guidance when Ms. J. exercised that option; and (c) the District's reliance on grossly inadequate evaluation data to justify the predetermined decision to terminate K.'s eligibility.

71. As a direct and proximate result of Defendant's violations of Section 504, K. has suffered and continues to suffer harm, including denial of FAPE, educational deprivation, emotional distress, and loss of educational opportunity.

**COUNT II**
**Violation of Title II of the Americans with Disabilities Act**
**42 U.S.C. § 12131 et seq.**

72. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

73. Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' 42 U.S.C. § 12132.

74. K. is a qualified individual with a disability under Title II of the ADA.

75. Defendant is a public entity subject to Title II of the ADA.

76. Defendant has discriminated against K. on the basis of her disability in violation of Title II by denying her equal access to educational programs and services.

77. Defendant's discriminatory conduct was intentional, made in bad faith, and in deliberate indifference to K.'s federally protected rights.

78. As a direct and proximate result of Defendant's violations of Title II of the ADA, K. has suffered and continues to suffer harm.

**COUNT III**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Rights Under Color of State Law**

79. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

80. Defendant, acting under color of state law, has deprived K. of rights, privileges, and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983.

81. Specifically, Defendant has violated K.'s rights to equal protection and due process under the Fourteenth Amendment by: (a) discriminating against her on the basis of disability; (b) denying her procedural safeguards in the evaluation process; and (c) terminating her Section 504 eligibility through an arbitrary and capricious process lacking any rational basis.

82. Defendant's conduct was intentional, made with deliberate indifference to K.'s constitutional rights, and without any legitimate governmental interest.

83. As a direct and proximate result of Defendant's violations under 42 U.S.C. § 1983, K. has suffered and continues to suffer harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

84. Issue a preliminary and permanent injunction requiring Defendant to immediately reinstate K.'s Section 504 Plan and provide all accommodations necessary for her to access FAPE;

85. Declare that Defendant's actions violated Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and 42 U.S.C. § 1983;

86. Award compensatory damages to Plaintiffs for the harm suffered as a result of Defendant's violations;

87. Award punitive damages against Defendant for its intentional, bad faith, and deliberately indifferent conduct;

88. Award attorneys' fees and costs pursuant to the aforementioned federal statutes;

89. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Michael F. Braun

______________________________

MICHAEL F. BRAUN (BPR 032669)
Attorney For Plaintiffs
5016 Centennial Blvd., Ste. 200
Nashville, TN 37209
(615) 378-8942
Email: mfb@braun-law.com

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

/s/ Michael F. Braun

______________________________

MICHAEL F. BRAUN